No. 86-358

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

DANNY LEROY MARTIN,

        Defendant and Appellant.

_____

APPEAL FROM:  District Court of the Fifth Judicial District,
In and for the County of Beaverhead,
The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Mary Ann Sharon, Dillon, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
Kimberly A. Kradolfer, Asst. Atty. General, Helena
Thomas R. Scott, County Attorney, Dillon, Montana

_____

Submitted on Briefs:  March 5, 1987

Decided:  April 28, 1987

Filed: APR 2 8 1987

*Ethel M. Harrison*

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Mr. Martin appeals his conviction of burglary, felony theft, and criminal mischief. The District Court for the Fifth Judicial District, Beaverhead County, sentenced him to 20 years in prison, including 10 years as a persistent felony offender. We affirm.

The issues are:

1. Did the District Court abuse its discretion when it ruled that the State's fingerprint experts were qualified to testify?

2. Does sufficient evidence corroborate the accomplice testimony?

3. Did the District Court act improperly and in violation of Rule 614(b), M.R.Evid., when it asked certain questions during the trial?

4. Was Mr. Martin denied effective assistance of counsel at sentencing?

In November 1984, a break-in occurred at Parkview Junior High School in Dillon, Montana. A window panel was removed on an outside door and the doorknobs on several classrooms were smashed. The following day, school officials discovered that a microwave oven, an undetermined amount of cash, and several hand calculators were missing. The Dillon police dusted the area for fingerprints.

James Reinke later confessed to the crime and implicated defendant Mr. Martin. Mr. Reinke testified at Mr. Martin's jury trial. The State also presented testimony by two expert witnesses who identified as Mr. Martin's a fingerprint found on a cash box in the school principal's office. Other persons testified that Mr. Martin had no permissive or rightful basis for being in the school. Mr. Martin presented testimony from a third expert witness, who contradicted the

prosecution's experts, stating that the fingerprint on the cash box could not be matched to Mr. Martin's fingerprint. The jury found Mr. Martin guilty.

At his sentencing hearing, Mr. Martin requested that his court-appointed counsel be dismissed. The District Court granted the request and proceeded with the hearing, with the dismissed counsel remaining in the courtroom in a standby capacity.

I

Did the District Court abuse its discretion when it ruled that the State's fingerprint experts were qualified to testify?

Rule 702, M.R.Evid., provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Mr. Martin argues that the two police officers who testified as the State's experts were not qualified as fingerprint experts. He says their education and experience were too limited to qualify them as experts in this field.

One of the police officers who testified on behalf of the State had dusted for fingerprints at the school. He was the assistant chief of police in Dillon. He testified that he had received basic training at the Montana Law Enforcement Academy. He had also completed 40 hours of training on fingerprint classification and 40 hours of training in fingerprint identification. He had testified as an expert in three previous court proceedings. He had lifted from various surfaces at the school approximately 20 fingerprints which he thought might be of value. After Mr. Reinke confessed and

3

implicated Mr. Martin, the officer compared Mr. Martin's fingerprints with the fingerprints taken from the school. He demonstrated 12 points of comparison between Mr. Martin's fingerprint and the print from the cash box at the school, and testified that he concluded that the prints belonged to the same person.

Mr. Martin presented testimony by his own expert witness. This witness had extensive fingerprint identification experience. He was retired from the FBI and from the Montana Identification Bureau, is a Certified Fingerprint Expert, and has taught fingerprint identification at the Montana Law Enforcement Academy. He testified that there were at least 13 inexplicable differences between the fingerprint from the cash box and Mr. Martin's fingerprint.

The other police officer testifying as an expert witness for the State appeared on rebuttal. He was also a Montana Law Enforcement Academy graduate and had also taken classes in fingerprint classification and latent identification. He had also previously testified as an expert on fingerprint identification. He testified that he had verified the first officer's conclusion that the print taken from the cash box at the school was Mr. Martin's.

The transcript shows that Mr. Martin's counsel did an excellent job of bringing out to the jury the limited experience of the police officers in fingerprint identification as compared with the extensive experience of the defense's expert. The jury was presented with a clear conflict in the evidence.

The determination that a witness is an expert is within the discretion of the district judge and will not be disturbed absent an abuse of discretion. Foreman v. Minnie (Mont. 1984), 689 P.2d 1210, 1212, 41 St.Rep. 1478, 1480. This Court has previously allowed police officers to testify

4

as experts in such areas as accident reconstruction. The degree of a witness' qualifications affects the weight of the expert's testimony, not its admissibility. State v. Berg (Mont. 1985), 697 P.2d 1365, 1367, 42 St.Rep. 518, 520. The jury was instructed that it could weigh any expert testimony and reject it entirely if it concluded the opinion was unsound.

We conclude that both of the State's witnesses had sufficient training and experience to qualify them to testify as experts on fingerprint identification. While their experience and training were not as extensive as that of the defense's expert, the court properly left it within the jury's province to weigh all of the expert testimony. We hold that the District Court was within its discretion in allowing the State's two witnesses to testify as experts.

## II

Does sufficient evidence corroborate the accomplice testimony?

The testimony of Mr. Reinke, as an accomplice, must be independently corroborated in order for Mr. Martin's conviction to be upheld. Section 46-16-213, MCA, provides:

> A conviction cannot be had on the testimony of one responsible . . . unless the testimony is corroborated by other evidence which in itself and without the aid of the testimony of the one responsible . . . tends to connect the defendant with the commission of the offense. . . .

The corroborating evidence presented by the State in this case was the expert testimony regarding the fingerprint. Mr. Martin says this is not sufficient because the fingerprint and the testimony about it have no probative value.

Since Mr. Martin's argument is premised on his position in Issue I, which we have rejected, his argument here fails.

5

We hold that the evidence regarding the fingerprint on the cash box was sufficient to corroborate the testimony of Mr. Reinke. The fingerprint evidence found under the circumstances of this case is sufficient to sustain a conviction. State v. Lucero (Mont. 1984), 693 P.2d 511, 41 St.Rep. 2509; People v. Ray (Colo. 1981), 626 P.2d 167.

### III

Did the District Court act improperly and in violation of Rule 614(b), M.R.Evid., when it asked certain questions during the trial?

Rule 614(b), M.R.Evid., provides:

> The court may interrogate witnesses, whether called by itself or a party; provided, however, that in trials before a jury, the court's questioning must be cautiously guarded so as not to constitute express or implied comment.

Mr. Martin asserts that the District Court violated this rule on three separate occasions during his two-day trial. The incidents occurred during the testimony of Mr. Reinke, of the State's chief expert witness, and of the defense's expert witness.

The first alleged impropriety occurred while Mr. Reinke was on the witness stand. Mr. Reinke was testifying about what he and Mr. Martin did as they proceeded through the school after breaking in. During the testimony, the judge asked, "Didn't you boys have a flashlight?" The defense argues that this question from the court tended to give credibility to the witness' testimony, in the minds of the jury.

This Court has made it clear that where a defendant does not object at trial to the remarks and conduct of the trial judge, the issue will not be considered upon appeal. State v. Lloyd (Mont. 1984), 676 P.2d 229, 231, 41 St.Rep. 263,

6

No objection was made to the District Court's remark until it was raised in this appeal. The defense contends that "[a]n objection [during trial] by Mr. Martin's counsel to the most damaging comment by the presiding judge would clearly have created more prejudice on the part of the jury." That view does not relieve the obligation of counsel to object at trial.

Further, the judge's question did not constitute plain error. While the question could possibly be viewed as a reflection of the judge's belief in what Mr. Reinke stated, it does not necessarily imply belief in the testimony. We conclude that it does not constitute express or implied comment on the evidence.

The second comment raised as grounds for a new trial occurred during cross-examination of the State's fingerprint expert. The witness was asked whether he had sought a second opinion on his conclusion that the print on the cash box matched Mr. Martin's. He answered, "Yes, I did. I asked Deputy Reeder if he would take a look at the enlargements that I had made." The court asked, "And?" Defense counsel objected that the court's question was improper, but the District Court instructed the witness to answer, and he did.

Nothing in the rules of evidence prohibits a trial judge from asking questions to clarify testimony. State v. Bier (1979), 181 Mont. 27, 34, 591 P.2d 1115, 1119. We conclude that the court's question did not constitute an express or implied comment upon the evidence, but was in the nature of an effort to clarify the testimony.

The third allegedly improper question by the judge occurred during the testimony of the defense's expert witness. The witness testified at length on his qualifications and on the subject of comparing fingerprints. During the questioning, the trial judge asked, "I gather this art of

7

fingerprint identification is not an exact science, huh?" The witness acknowledged that the science is not exact.

Again, defense counsel failed to object at trial to the court's question. Further, the idea that fingerprint identification is not an exact science applies to the testimony of the State's expert witnesses as much as it does to the testimony of the defense's witness. Mr. Martin has not shown reversible error. We must, however, caution the District Court that its comments are close to the line of impermissible comment on the evidence and are the type of remarks which could be a basis for reversal.

IV

Was Mr. Martin denied effective assistance of counsel at sentencing?

Mr. Martin points out that a criminal defendant is entitled to the assistance of counsel at a sentencing hearing. His position appears to be that after his trial counsel was dismissed at the beginning of the sentencing hearing, the remainder of the hearing should have been postponed until new counsel was appointed for him.

An indigent defendant may, by his actions, make a knowing and intelligent waiver of his right to an attorney, State v. Harvey (1979), 184 Mont. 423, 430, 603 P.2d 661, 665, but he does not have the right to choose appointed counsel. State v. Lopez (1980), 185 Mont. 187, 192-93, 605 P.2d 178, 181. Prior to the sentencing hearing, Mr. Martin filed a pro se motion for new trial with over 50 pages of supporting documents in which he claimed that his counsel was ineffective. At the sentencing hearing, the motion was discussed and the judge relieved that attorney from any further duty to represent Mr. Martin. The court appointed the same attorney as standby counsel for Mr. Martin, with the

8

understanding that Mr. Martin could consult the attorney during the remainder of the hearing if he wished to do so.

During the remainder of the sentencing hearing, the court invited Mr. Martin to question witnesses and to object to the introduction of evidence. Mr. Martin did not question any of the witnesses or object to any evidence introduced, but stated that he wished to have new counsel to pursue the claims he set forth in his motion for a new trial. The District Court explained that the matters raised in the motion for a new trial could be properly raised on appeal, not at the sentencing hearing. Mr. Martin's detailed motion for a new trial and his extensive supporting memorandum, along with the presentence investigation report, support the court's conclusion that Mr. Martin is thoroughly familiar with the criminal justice system.

We conclude that Mr. Martin was not denied effective assistance of counsel at his sentencing hearing. The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices